IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

UNITED STATES OF AMERICA,

      Respondent,

V.                                          CRIMINAL NO. 3:00-00111-01
                                           (CIVIL ACTION NO. 3:03-0324)

CIABATTINO McSHAN,

      Movant.

**FINDINGS AND RECOMMENDATION**

      Following trial by jury in September of 2001, movant, Ciabattino McShan, was convicted of conspiring to distribute more than fifty grams of cocaine base and aiding and abetting possession of more than five grams of cocaine base with intent to distribute the same. On November 26, 2001, he was sentenced to concurrent terms of 160 months imprisonment to be followed by five years supervised release. His conviction and sentence were affirmed on appeal. United States v. McShan, No. 01-4984, 39 Fed.Appx. 904 (4th Cir. July 15, 2002). Thereafter, McShan filed a motion under the provisions of 28 U.S.C. §2255 in which he asserts that counsel representing him was ineffective. The United States has filed a response to the motion, movant has filed a reply and the matter is ready for decision.

      Movant's principal claim stems from his assertion that counsel failed "to have Ms. Kelly diagnose [him] as being of diminished capacity" and "to provide the Government with adequate Rule 12.2 and Rule 16(b)(1)(C) notice of expert testimony regarding an insanity defense."

In ruling on movant's claims of ineffective assistance, the Court evaluates counsel's performance under standards established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), recognizing that the proper standard for attorney performance is that of "reasonably effective assistance" and that movant must establish not only "that counsel's representation fell below an objective standard of reasonableness," id. at 687-88, but also that counsel's deficient performance prejudiced the defense, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," a "reasonable probability" being "a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court is not required to address the performance and prejudice components in any particular order, and, in light of movant's burden of showing both deficient performance and prejudice, the Court need not address both components "if the defendant makes an insufficient showing on one." Id. In the Court's view, counsel's alleged deficiencies with respect to movant's purported "diminished capacity" did not prejudice his defense. Accordingly, it is that component of ineffective assistance which will be addressed with respect to this claim.

As the Court will remember, questions with respect to movant's mental status were initially raised in July of 2000 when counsel indicated a concern – not with movant's competency – that McShan might suffer from a mental condition that would render a statement he had previously given law enforcement officers involuntary. In a subsequent hearing on a motion to suppress movant's statement, after hearing testimony from the officers involved in taking the statement and from movant, the Court, finding movant's statement knowing and voluntary and given after proper Miranda warnings, denied the motion to suppress. Thereafter, on March 5, 2001, counsel for movant received a report of psychological evaluation prepared by Sheila Emerson Kelly, a licensed

psychologist, at the request of counsel. Ms. Kelly indicated that the examination was requested because of concern that Mr. McShan was "of such limited capacity as to be unable to understand the nature of his crime, assist in his own defense, and so forth" and that he was "so incapacitated as to be unable to understand the repercussions" of a confession. Finding movant illiterate and mildly mentally retarded, Kelly was of the opinion that he was not competent to assist in his own defense or of "understanding the underlying motivations of anybody interviewing him." Her diagnostic impression was mild mental retardation, antisocial personality disorder and possible psychotic disorder, not otherwise specified. On March 12, 2001, movant's counsel filed a notice pursuant to Rule 12.2(a) and (b), Fed.R.Crim.P., stating that she intended to offer expert testimony relating to movant's mental condition and to raise the defense of mental disease or defect "as set forth in the report of Sheila Kelly on March 5, 2001." Counsel also filed a renewed motion to suppress, noting Ms. Kelly's finding with respect to movant's I.Q. and asserting that "mental retardation" rendered "any statement he may have give [sic] involuntary." On that same day a hearing was held by the Court, and, on motion of the United States, an order was entered committing movant to the custody of the Federal Bureau of Prisons for the purpose of conducting a psychiatric or psychological examination to determine whether movant was able to understand the proceedings and assist counsel and whether he was "able to knowingly, intelligently, and voluntarily waive his constitutional right not to incriminate himself." The examination was conducted at the Federal Medical Center in Butner, North Carolina. Findings from the examination at Butner included results from intelligence testing which placed movant in the mildly retarded range of intelligence. The opinion was also expressed that, because the results of testing were "likely somewhat of an underestimate of his true abilities," he was "functioning between Mildly Retarded and Borderline range of intelligence."

3

Diagnoses included Adult Antisocial Behavior and Borderline Intellectual Functioning.[1] In the opinion of the psychiatrists, movant was competent to stand trial and "able to knowingly, intelligently and voluntarily waive his constitutional right not to incriminate himself."

Upon receipt of the report from Butner, and the return of movant to the district, a hearing was held on movant's renewed motion to suppress his confession. Based upon an examination of the reports and the evidence heard at the initial suppression hearing, including movant's testimony, the Court found movant "sufficiently competent to know and understand his rights at the time of his arrest and at the time those rights were waived and that he gave a voluntary statement." The Court indicated that it recalled movant's testimony at the suppression hearing and that it "observed Mr. McShan to be perfectly capable of understanding the questions posed and being able to answer them in the appropriate context," seeing "no indication then or at any other time that he had an inability to understand the types of questions or statements that would have accompanied his arrest and subsequent confession to law enforcement officers." By order entered July 31, 2001, movant's renewed motion to suppress was denied. At trial, while Ms. Kelly was permitted to testify concerning her psychiatric evaluation insofar as it bore on the voluntariness of movant's confession, she was not permitted to testify concerning diminished capacity. Concluding that defendant's notice failed to comply with the requirements of Rule 12.2 since Ms. Kelly's report failed to indicate that she was asked to address diminished capacity and that her report did not provide a basis for submitting the issue of diminished capacity to the jury, the Court granted the

---

[1] The diagnosis by Ms. Kelly and that at Butner did not differ significantly. Though Ms. Kelly diagnosed "Possible Psychiatric Disorder, Not Otherwise Specified," in the body of her report she indicated that he did not "appear actively psychotic" at the time of the examination and that he had "none of the classic signs of a psychotic disorder."

motion of the United States seeking to prohibit Kelly from testifying with respect to the question of whether McShan suffered from diminished capacity.[2]

Movant now asserts that counsel's failure "to have Ms. Kelly diagnose Petitioner as being of diminished capacity" and her failure to provide an "adequate Rule 12.2 and Rule 16(b)(1)(C) notice of expert testimony regarding an insanity defense" amounted to ineffective assistance of counsel.

As an initial matter, the Court would note that this case does not involve a failure to secure adequate information concerning a defendant's mental status and possible psychiatric infirmities. Examinations were secured by counsel for movant and the United States, examinations which, as previously noted, reached essentially the same conclusions, i.e., that movant's primary impairment resulted from the fact that he was functioning between mildly retarded and borderline range of intelligence. There is, however, nothing in the reports which would support an argument that movant's mental condition negated an ability to form the specific intent required to establish guilt under the conspiracy and intent to distribute counts for which he was convicted.[3] In her report,

---

[2] On appeal, the court upheld this ruling, concluding, similarly, that defendant's Rule 12.2 notice failed to comply with the requirements of the rule.

[3] Interestingly, at the time of movant's trial and appeal an unpublished decision in this circuit indicated that diminished capacity was not available as a defense following the passage of the Insanity Defense Reform Act of 1984. United States v. Hood, No. 87-5670, 1988 WL 96130 (4th Cir. August 3, 1988). In a 1991 decision, also unpublished, the Court noted that the Hood decision was contrary to that reached in all other circuits but that it did not need to address the issue since the psychiatric evidence was properly excluded. United States v. Moran, Nos. 90-5024, 90-5025, 1991 WL 12546 (4th Cir. July 12, 1991). Though acknowledging conceptual difficulties, the Court in United States v. Worrell, 313 F.3d 867, 874 (4th Cir. 2002), indicated that it was "inclined to agree with those courts holding that IRDA does not prohibit psychiatric evidence of a mental condition short of insanity when such evidence is offered merely to rebut the government's evidence of specific intent, although such cases will be rare."

Ms. Kelly does not state that movant's mental deficiencies would negate intent, and, while the report from Butner found movant functioning in the borderline range of intelligence, the conclusion that he was able to "knowingly, intelligently, and voluntarily waive his constitutional right not to incriminate himself" clearly indicates that intellectual deficiencies would not negate intent. Moreover, under the facts of this case it is abundantly clear that movant's mental deficiencies did not preclude intent. As the Court noted at sentencing, based on his activities it was a "close question" whether movant's offense level should have been increased by two levels based on his role in the offense, which included "sufficient mental capacity to plan and participate in a conspiracy to distribute crack, which resulted in multiple trips to this area, renting cars, making arrangements with others to find a place to stay, recruiting to some degree other participants in the deal." It necessarily follows, in the Court's view, that even if counsel had sought an examination considering issues related to diminished capacity and her notice had not been found deficient, movant's mental condition would not have supported argument with respect to lack of intent, and the Court would not have instructed the jury on the issue of diminished capacity. Under such circumstances, and in light of the evidence, there is no reasonable probability that, but for counsel's alleged deficiencies with respect to the psychiatric examination and the notice, the result of the proceeding would have been different, and, as a consequence, movant has failed to establish that his defense was prejudiced by counsel's alleged errors.

      Movant next asserts that counsel was ineffective in failing to move for dismissal of the conspiracy count under the Speedy Trial Act, 18 U.S.C. §3161. Movant was arrested on May 3, 2000, on a charge of conspiring to distribute cocaine base and subsequently indicted on May 25, 2000, in a single count indictment in which he was charged with aiding and abetting possession of

cocaine base with intent to distribute the same. Subsequently, on January 17, 2001, a two-count superseding indictment[4] was returned in which he was charged, in count two, with aiding and abetting possession of more than five grams of cocaine base with intent to distribute and, in count one, with conspiring to distribute more than fifty grams of cocaine base. McShan asserts that "because count 1 was filed more than thirty days after petitioner's arrest on the complaint," it was "in violation of 18 U.S.C. §3161(b)" and "[c]ounsel should have moved for dismissal under §3162(a)(1)." Under the provisions of 18 U.S.C. §3161(b) an indictment "charging commission of an offense" must "be filed within thirty days from the date" of an arrest "in conjunction with such charges." Obviously, the original indictment returned in this case was timely. Movant contends, however, that because the conspiracy count in a superseding indictment was not contained in the original indictment and the superseding indictment was returned more than thirty days from the time of his arrest, counsel should have moved for dismissal of the conspiracy count under the Speedy Trial Act. That, however, does not appear to be the view adopted in the better-reasoned decisions. Pointing out that the Speedy Trial Act is not a statute of limitations, that it is the applicable statute of limitations rather than the Speedy Trial Act which "'specifies the time within which an arrested indicted defendant may be charged with additional crimes by superseding indictment'" and that the Act "'does not guarantee that an arrested individual indicted within thirty days of his arrest must, in that thirty-day period, be indicted for every crime known to the Government, failing which he may never be charged,'" the Court in United States v. Mosquera, 95 F.3d 1012, 1013 (11th Cir. 1996), held that "[a] superseding indictment that issues more than thirty days after the arrest, but

---

[4] A superseding indictment is "a second indictment issued in the absence of a dismissal of the first." United States v. Rojas-Contreras, 474 U.S.231, 237 (1985)(Blackmun, J., concurring).

before the original indictment is dismissed does not violate §3161(b)." While the Court has not found a case in point from the Court of Appeals for the Fourth Circuit, this appears to be the view of at least "[s]everal circuits." United States v. Hemmings, 258 F.3d 587, 592 (7th Cir. 2001). Accordingly, the court concludes that the addition of the conspiracy count in the superseding indictment did not violate the Speedy Trial Act and that counsel was not ineffective for failing to seek dismissal.

Movant next asserts that counsel was ineffective for "failing to object to the Court sentencing under crack rather than cocaine." In this regard, it is noted that in movant's motion for judgment of acquittal or new trial he asserted that expert testimony did not sufficiently identify the alleged drugs as cocaine base, an allegation for which the Court found "no support" in the record. At trial, a chemist employed by the Drug Enforcement Administration testified that the substance retrieved from the residence where movant was arrested was found, after testing, to be cocaine base,[5] and the jury found, with respect to count one, that the conspiracy involved in excess of fifty grams of cocaine base and, with respect to count two, possession with intent to distribute more than five grams of cocaine base. Movant was sentenced for his involvement with "cocaine base," and there was simply no basis for counsel to object.

Movant contends that counsel was ineffective for failing to object to the sentence imposed on count two, asserting that the record is devoid of "what the Court utilized to determine his sentence" and "one can only assume the Court utilized the same 50 grams or more from count 1," which he characterizes as "double counting." Of course the jury in this case determined that

---

[5] As the United States points out in its response, in this circuit the court of appeals treats "cocaine base and crack as essentially synonymous terms when applied to a drug conviction sentence." United States v. Fisher, 58 F.3d 96, 99 (4th Cir. 1995).

8

movant possessed "more than five grams of cocaine base," and at sentencing movant's base offense level was determined by grouping counts one and two as contemplated by the provisions of USSG §3D1.2. Counsel for movant, accordingly, had no basis for objecting.

Finally, movant asserts a right to relief on the basis of the Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005) and on grounds that counsel failed to object "to the use of enhancements ... under the theory of law set forth" in those decisions. Movant's Booker claim clearly provides no right to relief in light of the Court's decision in United States v. Morris, 429 F.3d 65, 66 (4th Cir. 2005), concluding that Booker was not to be applied retroactively to cases on collateral review. With respect to his claim that counsel was ineffective for failing to anticipate the holdings in Blakely and Booker, "the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995). Counsel's failure to object at trial and sentencing or to raise a Booker claim on appeal, accordingly, did not constitute ineffective assistance.

## **RECOMMENDATION**

On the basis of the foregoing findings of fact and conclusions of law, it is **RESPECTFULLY RECOMMENDED** that the relief sought in this §2255 proceeding be denied.

Movant and respondent are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 8(b), Rules Governing §2255 Cases, the

parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the specific portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to transmit a copy of the same to movant and all counsel of record.

DATED: August 17, 2006

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE